IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ESTATE OF PHILOMENA THOMAS, THROUGH PHYLLIS FRANCIS DAVID AS EXECUTRIX,** <br> 34-54 70th Street <br> Jackson Heights, NY 11372 <br><br> Plaintiff, <br><br> v. <br><br> **CALIBER HOME LOANS, INC.,** <br><br><br> Defendant. | CASE NO. <br><br> JUDGE <br><br> MAGISTRATE <br><br> **COMPLAINT FOR DAMAGES WITH JURY DEMAND** |

Plaintiff Estate of Philomena Thomas, through Phyllis Francis David as Executrix ("Plaintiff"), through counsel, for her Complaint against Defendant Caliber Home Loans, Inc. ("Caliber" or "Defendant"), states:

### PARTIES, JURISDICTION, AND VENUE

1.  Phyllis Francis David (in an individual capacity, "David") is a natural person residing at 34-54 70th Street, Jackson Heights, NY 11372 (the "Home").

2.  On or about July 13, 2007, David's late mother, Philomena Thomas (in an individual capacity, "Thomas") took out a Mortgage on the Home with JP Morgan Chase Bank, N.A. (the "Loan").

3.  Thomas passed away on February 12, 2010.

4.  On August 23, 2017, Plaintiff was appointed the administrator of Thomas's estate.

*Copy of Letters of Administration attached as Plaintiff's Exhibit A*.

1

5. David and Plaintiff are the current owners of the Home.

6. Plaintiff is a "consumer" as that term is defined by applicable federal and state statutes.

7. Defendant Caliber is an Irving, Texas-based home mortgage originator and servicer established in 2013 by the merger of Caliber Funding and Vericrest Financial. Upon belief, Caliber acts as a mortgage servicer for various entities and, in such capacity, services mortgages on properties located in the State of New York.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA") and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

9. This action is specifically filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.36 of Regulation X and 12 C.F.R. § 1024.41 of Regulation X.

10. This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. § 1367.

11. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as Plaintiff's primary residence and has maintained the Home as Plaintiff's primary residence at all relevant times. The Home is located within Queens, New York which is within the jurisdiction of the Eastern District of New York.

**INTRODUCTION**

12. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013), which became effective on January 10, 2014.

14. The Loan in the instant matter is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

15. Caliber is subject to the aforesaid Regulations and none qualify for the exception for "small servicers" as defined in 12 C.F.R. § 1026.41(e)(4), nor for the exemption for a "qualified lender" as defined in 12 C.F.R. § 617.700.

16. Plaintiff maintains a claim for relief against Caliber for breaching the specific rules under Regulation X as set forth, *infra*.

17. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTUAL BACKGROUND

18. From on or about May 6, 2013 to the present, the Loan was the subject of foreclosure proceedings in the Queens County Supreme Court, assigned Index Number 1235/2013, and captioned or otherwise stylized as *JPMorgan Chase Bank vs. David, Phyllis Francis, et al*. (the "Foreclosure").

19. Upon belief, on or around May 1, 2014, Caliber began servicing the Loan.

20. On or around April 26, 2017, David filed for Chapter 7 bankruptcy, assigned case number 17-25049-nhl (the "Bankruptcy").

21. On or around May 11, 2017, Rosicki, Rosicki & Associates, P.C. ("Rosicki") filed a Notice of Appearance in the Bankruptcy on behalf of US Bank Trust (the "Appearance Notice").  ***Copy of the Appearance Notice attached as Plaintiff's Exhibit B***.

22. By virtue of the Appearance Notice, Rosicki received an Electronic Case Filing Notice "ECF Notice" every time an order, pleading, or other matter was entered on the Bankruptcy docket.

23. On or before June 28, 2017, Plaintiff submitted a short sale loss mitigation application (the "Application") to Caliber.  ***Copy of the history of correspondence between the Plaintiff's realtor and Caliber's representative enclosed as Exhibit C; specifically, see the Realtor's message dated 06/28/17.***

24. On June 28, 2017, Caliber informed Plaintiff "we need court approval to negotiate short sale on property." ***See Exhibit C***.

25. On July 27, 2017, David filed a Loss Mitigation Request in the Bankruptcy matter to garner the court approval Caliber requested by and through their June 28, 2017 message. ***Copy of said request attached as Plaintiff's Exhibit D***.

26. On August 14, 2017, the Bankruptcy Court entered an order granting the Loss Mitigation Request and directing the Plaintiff and Caliber to participate in the Loss Mitigation Program (the "Order").  Rosicki was notified via ECF of the Order.  ***Copy of Order attached as Plaintiff's Exhibit E***.

27. On August 15, 2017, Plaintiff sent Caliber an additional copy of the Order. ***See Exhibit C, message dated 08/28/17***.

28. Despite Caliber's own attorneys being notified of the Order and Plaintiff having provided an ECF copy of the Order, Caliber informed the Plaintiff that Caliber was still "looking for Court approval to [n]egotiate short sale on property, please send the Court document when you have it." ***See Exhibit C, message dated 08/17/17***.

29. On August 28, 2017, Plaintiff again provided Caliber with an ECF copy of the Order. ***See Exhibit C, message dated 08/28/17***.

30. On August 28, 2017, Plaintiff also provided Caliber with a copy of a property inspection report dated August 10, 2017 (the "Inspection Report"), the fully executed short sale contract, and a copy of the HUD-1. ***See Exhibit C, message dated 08/28/17***.

31. On September 5, 2017, Caliber inexplicably requested again a copy of the Order and inspection report. Caliber also requested, for the first time, documentation appointing Plaintiff as the administrator of Thomas's estate. ***See Exhibit C, message dated 09/15/17***.

32. On September 15, 2017, Plaintiff again provided a copy of Order. Plaintiff also provided a copy of the letters of administration appointing the Borrower as executor. ***See Exhibit C, realtor's message dated 09/15/17***.

33. On September 19, 2017, Caliber indicated they needed to know the results of the September 20, 2017 Bankruptcy Court hearing despite their participation in the same through Rosicki. Caliber also requested an itemized repair estimate despite Plaintiff having provided one previously. ***See Exhibit C, message dated 09/19/17***.

5

34. On September 28, 2017, Caliber again requested the results of the Hearing despite their participation in the same through Rosicki. *See Exhibit C, message dated 09/28/17*.

35. On October 5, 2017, Plaintiff provided copies of a new contractor repair estimate, the Proceeding Memorandum, the Letters of Administration, and the Tenant Eviction. *See the Realtor's message dated 10/05/17*.

36. Between October 5, 2017 and October 11, 2017, Caliber did not provide any updates on the short sale review.

37. On October 11, 2017, Plaintiff requested an update on the review of the Application. *See Exhibit C, message dated 10/11/17*.

38. On October 12, 2017, Caliber indicated "please be advise[d] the property are [sic] "AS IS." *See Exhibit C, message dated 10/12/17*.

39. That same date, Plaintiff reminded Caliber that Caliber's Broker's PriceOpinion (BPO) was "being challenged by the Buyer and Seller. Could you please order another BPO?" *See Exhibit C, message dated 10/12/17*.

40. Between October 12, 2017 and October 23, 2017, Caliber did not update the Plaintiff on the Application.

41. On October 23, 2017, Plaintiff requested an update on the review of the Application. *See Exhibit C, message dated 10/23/17*.

42. That same date, Caliber advised the Plaintiff her account was "no longer eligible for a short sale" because of "a change in policy" and indicated there was a preliminary deed-in-lieu (DIL) of foreclosure offer, subject to an application and review by Caliber. *See Exhibit C, message dated 10/23/17*.

6

43. On October 27, 2017, Plaintiff advised Caliber of the problem with the DIL offer, specifically, that there were delinquent, handicapped tenants residing at the Home who had not paid rent for a substantial period of time and that an eviction suit against them could take a year or longer to complete hindering Plaintiff's chances of leaving the Home in the requisite broom-swept condition. **See Exhibit C, message dated 10/27/17**.

44. The prospective buyer from the now "prohibited" short sale offer was fully aware of the situation with the Home's tenants and was going to purchase the Home regardless and handle that situation after closing on the purchase of the Home.

45. That same date, Caliber responded to Plaintiff, advising her "[t]his account is no longer eligible for a short sale…" **See Exhibit C, message dated 10/27/17**.

46. On or about January 3, 2018, Plaintiff sent correspondence to Caliber captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to exercise reasonable diligence in collecting the necessary information to complete a borrower's loss mitigation application as prohibited by 12 C.F.R. §1024.41(b)(1); Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for failing to provide a proper written denial notice of a borrower's loss mitigation application as prohibited by 12 C.F.R. §1024.41(d)" (the "NOE"). **Copy of the NOE attached as Exhibit F**.

47. The NOE was mailed via USPS Certified Mail, Return Receipt Requested [Tracking No.: 7015 1520 0000 9420 9102]. **Copy of the USPS Tracking for the NOE attached as Exhibit G**.

48. According to USPS Tracking, Caliber received the NOE on or around January 10, 2018. **See Exhibit G**.

7

49. Caliber responded to the NOE via correspondence dated January 17, 2018 (the "NOE Response"). **Copy of the NOE Response attached as Exhibit H**.

50. In the NOE Response, Caliber refused to conduct a reasonable investigation and instead indicated the bankruptcy notice of electronic filings Plaintiff submitted were not sufficient documentation, despite Caliber's own attorneys being copied on every order and entry the court entered in the Bankruptcy Matter and that each and every order and entry is publically accessible through the United States Courts' Public Access to Court Electronic Records (PACER) system. **See Exhibit H**.

51. In the NOE Response, Caliber also reiterated their refusal to continue the short sale negotiation because "[a]s of October 11, 2017, the investor of the loan, LSF8 Master Participation Trust, ceased accepting short sale offers on all loans." **See Exhibit H.**

52. Plaintiff brings this this action in an effort to clarify her rights and the rights of Caliber relative to the short sale review, enforce her rights under RESPA against Caliber, and to put an end to the constant concern, worry, and anxiety that she has over Caliber's servicing of the mortgage loan.

53. Caliber failed to properly service the Loan and correct its error of refusing to review the Plaintiff's short sale application in good faith which has directly and proximately caused the following damages to Plaintiff:

    a. Plaintiff incurred attorneys' fees and postage costs in preparing and sending the Notice of Error;

    b. Plaintiff retained attorney Hector R. Roman, P.C. ("Roman") to retain her in the Chapter 7 bankruptcy loss mitigation program. Plaintiff has already incurred

8

approximately $2,000 in legal fees and continues to incur legal fees to Roman in his continued loss mitigation representation as a direct and proximate result of Caliber's failure to properly review the short sale application

c. Plaintiff is forever foreclosed from short selling the Home as Caliber's investor no longer participates in short sale programs and Plaintiff cannot otherwise engage in deed-in-lieu of foreclosure negotiations in a time-efficient manner due to the delinquent tenant living in the Home and is likely to incur legal fees in rectifying such situation that would have otherwise been born by the buyer of the Home through the short sale.

54. Throughout this entire ordeal, Plaintiff has simply wanted to short sell her home, have the foreclosure dismissed, and clear up any issues related to the Home in a time-efficient manner.

55. At the time of the filing of this Complaint, Caliber has had more than two hundred fifty (250) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which can be located at the following hyperlink: http://www.consumerfinance.gov/complaintdatabase.

**COUNT ONE:
VIOLATION OF 12 C.F.R. § 1024.35(e)**

**(Failure to Perform Reasonable Investigation into or to Correct a Noticed Error)**

56. Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

57. 12 C.F.R. § 1024.35(e) provides, in relevant part, that a servicer must respond to a notice of error not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error, either correcting the errors identified or conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

58. Plaintiff sent the NOE to the address Caliber maintains for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). ***See Exhibit E.***

59. According to USPS Tracking, Caliber received the NOE on January 10, 2018. ***See Exhibit F.***

60. Therefore, pursuant to 12 C.F.R. § 1024.35(e), Caliber was to either correct the errors outlined in the NOE or conduct a reasonable investigation into the NOE and conclude no errors occurred the NOE no later than February 21, 2018.

61. In the NOE, Plaintiff provided a detailed description of Caliber's errors in the servicing of the loan at issue through their consistent lack of diligence exercised in reviewing the Plaintiff's short sale application, including:

    a. Caliber consistently demanding copies of court pleadings which Caliber had already been served with through Rosicki and refusing to proceed with the review until the Plaintiff provided these documents;

    b. Caliber refusing to continue their review of the complete short sale offer despite Plaintiff's continued compliance with all document requests;

    c. Caliber requesting copies of documents Plaintiff previously provided.

62. In Caliber's NOE response, they failed to even acknowledge the Plaintiff's error in regards to Caliber's own attorneys being present at the hearing. ***See Exhibit H***

63. Caliber's NOE Response also failed to provide a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance as required under 12 C.F.R. §1024.35(e).

64. Caliber has provided no other substantive response to the NOE besides the NOE Response.

65. Caliber's actions in failing perform a reasonable investigation into or to correct the NOE as expressly required by 12 C.F.R. § 1024.35(e)(3) constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.35(e).

66. Caliber's conduct as pled, *supra*, is outrageous, wanton, willful, and shows a conscious disregard for Plaintiff's rights.

67. As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages for attorneys' fees incurred in the continued bankruptcy loss mitigation process, statutory damages, and attorneys' fees.

68. Caliber has engaged in a pattern and practice of failing to properly board loan modifications and failing to comply with RESPA.

## COUNT TWO:
## VIOLATION OF 12 C.F.R. § 1024.41(b)

**(Failure to Exercise Reasonable Diligence in Reviewing Application)**

69. Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

70. 12 C.F.R. §1024.41(b) provides in relevant part:

> A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a Administrator in evaluating applications for the loss mitigation options available to the Administrator. **A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application** [emphasis added].

71. As described *supra*, Caliber failed time and time again to exercise reasonable diligence in collecting documents and information necessary to complete the Plaintiff's Application, in violation of 12 C.F.R. §1024.35(b)(1).

72. Caliber's conduct as pled, *supra*, is outrageous, wanton, willful, and shows a conscious disregard for Plaintiff's rights.

73. Caliber has engaged in a pattern and practice of failing to properly board loan modifications and failing to comply with RESPA.

74. As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages for attorneys' fees incurred in the continued bankruptcy loss mitigation process, statutory damages, and attorneys' fees, and attorneys' fees and postage costs incurred in the preparation and mailing of the NOE and review of the NOE Response.

## COUNT THREE:
## VIOLATION OF 12 C.F.R. §1024.41(d)

**(Failure to Provide Proper Written Loss Mitigation Denial Notice)**

75. Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

76. 12 C.F.R. §1024.41(d) provides:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the Administrator pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the Administrator pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the Administrator was not evaluated on other criteria.

77. The CFPB Official Interpretation to 12 C.F.R. §1024.41(d) provides:

> *Investor requirements.* If a trial or permanent loan modification option is denied because of a requirement of an owner or assignee of a mortgage loan, the specific reasons in the notice provided to the Administrator must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial. A statement that the denial of a loan modification option is based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient.

78. As described *supra*, Caliber undertook review of the Plaintiff's short sale application.

79. On October 23, 2017, Caliber informed the Plaintiff "[t]his account is no longer eligible for a short sale and we will not approve a loss." ***See Exhibit C***.

80. Caliber's October 23, 2017 notice did not constitute a proper denial notice as set forth under 12 C.F.R. §1024.41(d) for several reasons:

    (a) Caliber failed to explain the specific investor requirement prohibiting a review of the Plaintiff's eligibility for a short sale;

    (b) Caliber failed to provide a *written* notice of the denial of the short sale application;

81. Caliber's actions in failing to provide the Plaintiff with a proper written loss mitigation denial notice constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41(d).

82. Caliber's conduct as pled, *supra*, is outrageous, wanton, willful, and shows a conscious disregard for Plaintiff's rights.

83. Caliber has engaged in a pattern and practice of failing to properly board loan modifications and failing to comply with RESPA.

84. As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages for attorneys' fees incurred in the continued bankruptcy loss mitigation process, statutory damages, and attorneys' fees, and attorneys' fees and postage costs incurred in the preparation and mailing of the NOE and review of the NOE Response.

### COUNT FOUR:
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW 349

**(Dual Tracking as Deceptive Business Practice)**

85. Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

86. Plaintiff is a "person" within the meaning of N.Y. Gen. Bus. Law § 349(h).

87. N.Y. Gen. Bus. Law § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State.

88. Caliber's intentional and willful conduct complained of herein consisted of deceptive acts and practices in the form of misrepresentations and omissions during conduct of business in New York in violation of N.Y. Gen. Bus. Law § 349(a) while reviewing the Application.

89. Caliber's refusal to properly review the short sale application pursuant to the requirements set forth under 12 C.F.R. 1024.41(b) constituted a violation of N.Y. Gen. Bus. Law § 349(a).

90. Caliber knew, or should have known, that the act of refusing to use reasonable diligence in reviewing the Plaintiff's Application was deceptive and likely to deceive and mislead the Plaintiff.

91. Caliber's deceptive and misleading act directly and proximately caused damages and injuries to the Plaintiff including actual damages, included but not limited to, the attorney fees to prepare the NOE, the attorneys' fees incurred in the ongoing Bankruptcy loss mitigation program, and the ability to apply for a short sale.

92. As a result of Caliber's actions, Caliber is liable for actual damages, statutory damages, costs, and attorneys' fees pursuant to N.Y. Gen. Bus. Law § 349(a).

**COUNT FIVE:**
**Violation of 3 NYCRR 419.3**

93. Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

94. Pursuant to 3 NYCRR 419.3 Caliber, as a company registered and doing business in New York is required to obey New York Law.

95. Pursuant to 3 NYCRR 419.3, Caliber is required at all times to conduct its business in accordance with the requirements as set forth in various Federal Consumer Protection Statutes, including but not limited to RESPA and the FDCPA in addition to being required to comply with New York State Consumer Protection Statutes, including but not limited to New York GBL §349.

96. As described *supra*, Caliber has violated numerous sections of RESPA, Regulation X, FDCPA and NY GBL §349.

97. As such, Caliber is in violation of 3 NYCRR 419.3, and as such is entitled to a declaratory judgment.

## CONCLUSION

98. Caliber's delays and failure to exercise reasonable diligence in reviewing the short sale application for the Plaintiff in this case is consistent with their continuing poor mortgage servicing practices and non-compliance with the RESPA regulations contained in 12 CFR §1024.41 et seq. Defendant's conduct is part of a pattern and practice and, pursuant to 12 USC §2605 (f)(1)(B), and the Plaintiff entitled to statutory penalties for each and every violation of the regulations contained in 12 C.F.R. §1024.41 and §1024.35.

99. As a direct and proximate result of Caliber's conduct and the distinct and ongoing violations above enumerated, Plaintiff suffered actual damage in the form of wasted time, frustration, and humiliation along with the emotional distress that follows from the investor of her loan no longer permitting short sales. Plaintiff was forced to incur attorney fees and costs to

continue the bankruptcy loss mitigation, attorneys fees and postage costs to mail the notice of error, and attorney fees to investigate and prepare this suit and has suffered further damage to her already weakened credit profile

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Estate of Philomena Thomas, through Phyllis Francis David as Executrix, respectfully requests for this Court to enter Order granting judgment for the following:

    A.    For actual damages, costs and reasonable attorneys' fees as to each and every count against Caliber;

    B.    For statutory damages of no less than Two Thousand Dollars ($2,000.00) against Caliber for each and every violation contained in Counts One, Two, and Three;

    C.    For actual damages of Fifty Dollars ($50.00), whichever amount is greater, against Cailber for each and every violation contained in Count Four;

    D.    For declaratory judgment that Caliber violated 3 NYCRR 419.3; and,

    E.    Such other relief to which this Court may deem appropriate.

*Respectfully submitted,*

*/s/ Javier L. Merino*
Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Estate of Philomena Thomas, through Phyllis Francis David as Executrix*

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all such claims that may be so tried.

>  */s/ Javier L. Merino*
>  Javier L. Merino
>  DannLaw
>  *Counsel for Estate of Philomena Thomas, through Phyllis Francis David as Executrix*